IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

| | |
|---|---|
| BENJAMIN KARL SMITH,<br><br>Plaintiff,<br><br>vs.<br><br>D.J. GODFREY, WARDEN FLETCHER, ASST. WARDEN POWELL, MR. HENSON, CHAPLIN DE LELLA, and MR. MADRID,<br><br>Defendants. | CV-18-00150-GF-BMM-JTJ<br><br><br>FINDINGS AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE |

Plaintiff Benjamin Smith filed a Complaint alleging he has been denied his rights under the First, Eighth, and Fourteenth Amendments to the United States Constitution and under the Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA) 42 U.S.C. § 2000cc et seq. (Doc. 2) and a motion for summary judgment (Doc. 4). Mr. Smith alleges Defendants refused to allow him to attend Jumah services (Muslim congregational prayer service) at the Crossroads Correctional Center. He seeks injunctive relief and monetary damages.

I.  SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment

1

as a matter of law." Fed. R. Civ. P. 56(a). Under summary judgment practice, "[t]he moving party initially bears the burden of proving the absence of a genuine issue of material fact." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that the adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B).

"Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." *Oracle Corp.*, 627 F.3d at 387 (*citing Celotex*, 477 U.S. at 325); *see also* Fed. R. Civ. P. 56(c)(1)(B). Summary judgment should be entered, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *See Celotex*, 477 U.S. at 322. "[A] complete failure of proof concerning an essential

2

element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." *Id.*

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. *See* Fed. R. Civ. P. 56(c)(1); *Matsushita*, 475 U.S. at 586 n.11. "A plaintiff's verified complaint may be considered as an affidavit in opposition to summary judgment if it is based on personal knowledge and sets forth specific facts admissible in evidence." *Lopez v. Smith*, 203 F.3d 1122, 1132 n.14 (9th Cir. 2000) (en banc). The opposing party must demonstrate that the fact in contention is material, i.e., a fact "that might affect the outcome of the suit under the governing law," and that the dispute is genuine, i.e., "the evidence is such that a reasonable

3

jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

"In evaluating the evidence to determine whether there is a genuine issue of fact," the court draws "all inferences supported by the evidence in favor of the non-moving party." *Walls v. Cent. Costa Cnty. Transit Auth.*, 653 F.3d 963, 966 (9th Cir. 2011). It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. *See Richards v. Nielsen Freight Lines*, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586 (citations omitted).

## II. FACTS

Mr. Smith originally filed the claims raised in this action on January 16, 2018. (Civil Action No. 18-cv-00008-GF-BMM, Doc. 2.) That case, however, was dismissed without prejudice for failure to exhaust administrative remedies. *Id.* at Doc. 24.

In his current action filed December 6, 2018, Mr. Smith refiled the same or similar claims as those raised in Civil Action 18-cv-0008-GF. (Doc. 1). On December 19, 2018, Mr. Smith filed his Motion for Summary Judgment arguing

Defendants knowingly and willfully denied his constitutional rights. (Doc. 4.)

Much of the factual information provided by Mr. Smith pertains to his efforts to exhaust his administrative remedies. The CoreCivic Defendants have not raised a failure to exhaust administrative remedies defense (CoreCivic Answer, Doc. 13; CoreCivic Response Brief, Doc. 15 at 4) and Defendant Godfrey does not contest that Mr. Smith exhausted his administrative remedies as required by 42 U.S.C. § 1997e(a). (Godfrey Answer, Doc. 18 at 10.)

Mr. Smith was housed at Crossroads Correctional Center from August 21, 2017 to January 30, 2018. For purposes of this Order, the Court will assume that Mr. Smith was not allowed to attend communal Jumah services with other inmates. Mr. Smith alleges this was a violation of his constitutional rights.

Defendants explain that Mr. Smith was housed as a Close Custody inmate which is the highest custody level in general population. According to Defendants, inmates classified to this custody level pose a threat to the safety and security of the facility, staff, and other inmates and the public and as such they require additional supervision based upon criminal history, institutional adjustment, severity of offense, and sentence length. (CoreCivic SDF at ¶ 6.) Defendants have provided evidence that during the time Mr. Smith was requesting to participate in Jumah services, no other inmate, regardless of custody level, had

5

come forward requesting to participate in Jumah services.  (Henson Affidavit, Doc. 16 at ¶ 9; September 19, 2017 Informal Response by Chaplain Di Lella, Doc. 14-1.)  Mr. Smith contends that at least four other inmates in addition to himself, were Muslims who wanted to attend Jumah services.  (Reply, Doc. 23 at 2-3.)

On January 8, 2018, Mr. Smith filed an informal resolution form stating that he was being denied the right to practice his religion.  The response indicated that, "Mr. Godfrey (Corrections Service Manager MDOC) informed you in Dec 2017 that you were not going to be able to attend the Jumah services with general population due to the fact you are closed custody."  (Doc. 6-1 at 3.)

### III.  DISCUSSION

The First Amendment prohibits the government from making a law prohibiting the free exercise of religion.  "The right to exercise religious practices and beliefs does not terminate at the prison door.  The free exercise right, however, is necessarily limited by the fact of incarceration, and may be curtailed in order to achieve legitimate correctional goals or to maintain prison security."  *McElyea v. Babbit*, 833 F.2d 196, 197 (9th Cir. 1987) (per curiam).  In asserting a free exercise claim, an inmate must demonstrate that the "government action in question substantially burdens the person's practice of her religion."  *Jones v. Williams*, 791 F.3d 1023, 1031 (9th Cir. 2015) (citation omitted).  This is "more

6

than an inconvenience," and "must have a tendency to coerce individuals into acting contrary to their religious beliefs or exert substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Id.* at 1031-32 (citation omitted).

An inmate's First Amendment free exercise claims must be analyzed under *Turner v. Safley*, which holds that prison restrictions will be upheld as long as they are "reasonably related to legitimate penological interests." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987) (*citing Turner v. Safley*, 482 U.S. 78, 89 (1987)); *see also Jones*, 791 F.3d at 1032 (citations omitted). "This approach ensures the ability of corrections officials 'to anticipate security problems and to adopt innovative solutions to the intractable problems of prison administration,' and avoids unnecessary intrusion of the judiciary into problems particularly ill suited to 'resolution by decree.' " *Id.* (*quoting Procunier v. Marinez*, 416 U.S. 396, 405 (1974), and *citing Turner*, 482 U.S. at 89, *Bell v. Wolfish*, 441 U.S.520, 548 (1979) ).

The factors *Turner* cited as relevant to the inquiry of whether the restrictions are reasonably related to legitimate penological interests are: (1) a "valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it"; (2)" whether there are alternative

7

means of exercising the right that remain open to inmates"; (3) "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally"; and (4) the "absence of ready alternatives" and the "existence of obvious, easy alternatives." *Turner*, 482 U.S. at 89-91.

For purposes of this Order, the Court will assume that Mr. Smith had a sincerely held religious belief in attending Jumah services. The Court will also assume for purposes of this Order only that not allowing communal Jumah services was a substantial burden on Mr. Smith's practice of his religion. Jumah services have been compared in importance "to the Saturday service of the Jewish faith and the Sunday service of the various Christian sects." *See O'Lone v. Estate of Shabazz*, 482 U.S. 342, 360 (1987) (Brennan, J., dissenting).

There is a genuine issue of fact, however, regarding whether the restrictions placed on Mr. Smith's exercise of his religious beliefs were reasonably related to legitimate penological interests. In grievance responses, Defendants first indicated that Mr. Smith was denied communal Jumah services based upon his custody level. (September 14, 2017 informal, Doc. 6-1 at 1.) Then on January 29, 2018, Assistant Warden Powell indicated to Mr. Smith that there must be a minimum of five participates to register as a religious affiliation in order to meet

8

together. AW Powell indicated that Mr. Smith could practice his religion in his living space and he had been given all religious items requested. (January 11, 2018 Grievance, Doc. 6-1 at 4.) The response to Mr. Smith's appeal to the Warden indicated that Mr. Smith was not denied the ability to worship, he was denied to be in the same unsupervised services with low custody inmates. (March 2, 2018 Appeal, Doc. 6-1 at 6.)

The basis of Defendants' response to Mr. Smith's motion is that during the time Mr. Smith was requesting to participate in a Jumah service, no other inmate, regardless of custody level, had come forward requesting to participate in a Jumah service. (Henson Aff., Doc. 16 at 3.)

There is a genuine issue of material fact regarding whether the denial of communal Jumah services was reasonably related to legitimate penological interests whether that be because Mr. Smith was in restrictive housing, because there were not enough inmates wanting to participate in Jumah services, or because no other inmate had asked to attend Jumah services. The material facts of this case are highly disputed and supported by conflicting evidence. Mr. Smith contends there were at least five inmates seeking to attend Jumah services. Defendants dispute that and contend that Mr. Smith was the only inmate in any custody level who had come forward requesting to participate in Jumah services.

Given these issues of fact, summary judgment is improper and the Court issues the following:

## RECOMMENDATIONS

Mr. Smith's Motion for Summary Judgment (Doc. 4) and Motion to Grant Motion for Summary Judgment (Doc. 21) should be DENIED.

## NOTICE OF RIGHT TO OBJECT TO FINDINGS & RECOMMENDATIONS AND CONSEQUENCES OF FAILURE TO OBJECT

The parties may file objections to these Findings and Recommendations within fourteen (14) days after service (mailing) hereof.[1] 28 U.S.C. § 636. Failure to timely file written objections may bar a de novo determination by the district judge and/or waive the right to appeal.

This order is not immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Fed.R.App.P. 4(a), should not be filed until entry of the District Court's final judgment.

DATED this 24th day of June, 2019.

                                              */s/ John Johnston*
                                              John Johnston
                                              United States Magistrate Judge

---

[1] Rule 6(d) of the Federal Rules of Civil Procedure provides that "[w]hen a party may or must act within a specified time after being served and service is made under Rule 5(b)(2)(C) (mail) . . . 3 days are added after the period would otherwise expire under Rule 6(a)." Therefore, since Mr. Wallace is being served by mail, he is entitled an additional three days after the period would otherwise expire.